**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Jennifer Wyman**

**v.**

Case No. 11-cv-574-PB
Opinion No. 2012 DNH 019

**Michael J. Astrue, Commissioner**
**Social Security Administration**

## MEMORANDUM AND ORDER

Jennifer Wyman seeks judicial review of a ruling by the Commissioner of the Social Security Administration denying her application for Supplemental Security Income benefits ("SSI"). Wyman claims that the Administrative Law Judge ("ALJ") who denied her claim lacked substantial evidence to support his finding that alcohol dependence was a contributing factor material to her disability. For the reasons set forth below, I remand the case for further proceedings before the Commissioner.

## I. BACKGROUND[1]

Wyman was born on June 25, 1973, and filed for SSI at age thirty-six. She completed high school and one year of college. She has past work experience as a grill cook and waitress.

---

[1] The background facts are presented in detail in the parties' Joint Statement of Material Facts (Doc. No. 17) and are summarized here. Citations to the Administrative Transcript are indicated by "Tr."

A.    **Procedural History**

Wyman filed for SSI on December 15, 2009, alleging disability due to depression and anxiety.  Tr. 117.  She alleged a disability onset date of December 14, 2009.  Id.  The Social Security Administration denied Wyman's claim on February 23, 2010, and again on reconsideration two days later.  She requested a hearing, at which she and a vocational expert ("VE") testified.  On May 27, 2011, the ALJ issued a decision finding that Wyman was not disabled within the meaning of the Social Security Act.

B.    **Treatment History**

On July 14, 2010, Susan Leonard, a licensed social worker, examined Wyman and noted that she had a history of sexual abuse and alcoholism.  Wyman told Leonard that she drank beer every day and used cocaine intermittently.  Leonard noted that Wyman seemed incapable of working, had some social skills, reported feeling comfortable only when under the influence, had little self-awareness, and historically was unable to maintain a medication regimen.  Wyman performed well on her mental status examinations, except that she used her fingers to count and made some spelling errors.  Leonard diagnosed Wyman with post-traumatic stress disorder, cocaine dependence without

2

physiological dependence, alcohol dependence with physiological dependence, and personality disorder not otherwise specified with borderline and antisocial traits.  She opined that Wyman had a Global Assessment of Functioning ("GAF") score of 45.[2] Quentin Turnbull, M.D., concurred with Leonard's assessment.

On August 20, 2010, Dr. Janet Carella, M.D., examined Wyman.  Wyman reported that she drank six beers at a time, several times a week, but denied using other substances.  She denied suicidal and homicidal ideation.  She claimed that her mood was unpredictable and that she had trouble sleeping. During a later examination on October 5, 2010, Wyman told Dr. Carella that she was drinking approximately six beers a day, down from eighteen to twenty-one beers.

On October 19, 2010, Michele Authier, a social worker, and Dr. Paul Lidstrom, M.D., conducted an intake assessment of Wyman.  Wyman reported that she routinely drank ten to twelve

---

[2] The GAF scale is used to track "the clinical progress of individuals in global terms, using a single measure.  The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (rev. 4th ed. 2000) [hereinafter DSM-IV].  GAF scores range from 0–100.  A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34.

beers a day, down from twenty-four.  Dr. Lidstrom diagnosed
Wyman with post-traumatic stress disorder, alcohol dependence
with physiological dependence, and personality disorder not
otherwise specified with borderline antisocial traits.

On December 14, 2010, Nicole Fischler, a nurse
practitioner, diagnosed Wyman with depressive disorder,
generalized anxiety, substance abuse disorder, post-traumatic
stress, and abuse/neglect.  A mental status examination revealed
that Wyman had normal orientation, attention, concentration,
memory, language, and thought; nervous mood and affect; and fair
judgment and insight.  Fischler noted that Wyman was working
with a counselor at White Mountain Mental Health to deal with
her alcoholism.  Tr. 369.  On December 29, 2010, Fischler opined
that Wyman's post-traumatic stress disorder, depression, history
of domestic violence, and alcoholism caused her to be
permanently disabled.

On January 20, 2011, Dr. Jeffrey Kay, a clinical
psychologist, conducted a psychiatric evaluation.  He found that
Wyman was depressed and anxious, but neat, clean, friendly, and
cooperative.  She displayed a flat affect, denied hallucinating
when sober, did not demonstrate any other abnormalities of
thought content, and had average attention and short-term
memory.  Based on the mental status examination, Dr. Kay

4

determined that Wyman had a moderate degree of functional loss
in her ability to perform daily activities, to engage in social
interactions, and to react to work-related stress.  He concluded
that she had a slight degree of functional loss in her ability
to perform work related tasks.  He also opined that Wyman had a
good probability of returning to work in one to two years.  Dr.
Kay diagnosed Wyman with bipolar II disorder, post-traumatic
stress disorder (chronic and with social phobia and
agoraphobia), and alcohol dependence without psychological
dependence in early partial remission.

     On April 4, 2011, Wyman told Fischler that she was "not
doing good at all."  She said that she was getting angry and
yelling at others and had mood swings.  She said she had started
drinking again and had already consumed three beers.  A mental
status exam revealed normal orientation, attention,
concentration, memory, speech, and thought; nervous mood and
affect; and fair insight and judgment.  Fischler assessed Wyman
with alcoholism relapse.  She prescribed Lamotrigine to
stabilize her mood and Clonidine for anxiety.

     On April 12, 2011, Fischler filled out a "Psychiatric
Checklist" supplied by Wyman's attorney.  She noted that Wyman
had marked difficulties using the telephone, paying bills,
planning daily activities, and holding a job.  She also reported

that Wyman had repeated episodes of deterioration or decompensation in stressful situations.  She concluded that Wyman would experience the same limitations even if she stopped using drugs or alcohol.

B.    **Administrative Hearing - May 16, 2011**

    1.    Wyman's Testimony

    Wyman testified that she began drinking as a teenager in response to abuse she had suffered as a child.  She reported that she suffers from depression, post-traumatic stress disorder, and associated anxiety disorders.  She also claimed to suffer that she suffers from nightmares and agoraphobia and stated that her post-traumatic stress disorder makes it difficult for her to cope with stress.

    She reported that she stopped working on December 31, 2007, because the business where she worked closed.  She claimed that she has not looked for work because she has been in and out of jail.  She also testified that she has been incarcerated for most of the past twenty years for crimes such as drug possession, forgery, and criminal trespassing.

    Wyman stated that she is not able to work because she does not feel like going to work when she is having "bad days."   On a "bad day" Wyman testified that she feels anxious and depressed.  She also claimed that she cannot predict when a "bad

day" will occur.

On a typical day, Wyman wakes up, takes a shower, washes dishes, and watches television.  She testified that she has panic attacks when she goes outside.  Her friends help her with laundry and shopping.  She testified that she cannot deal with stress or meet deadlines.

She reported that she does not have any problems with memory, but that her impairments affect her ability to complete tasks, concentrate, and get along with others.  She has a particularly difficult time concentrating around men because she believes they look at her in a sexual manner.

Wyman claimed that she stopped drinking in January 2011.

2.  <u>Vocational Expert's Testimony</u>

VE Ralph Richardson testified that Wyman previously worked as a grill cook and waitress.  The ALJ asked Richardson whether an individual with no exertional limitations, who is limited to simple, routine, and repetitive tasks performed in an environment involving only simple work-related decisions and routine workplace changes, and who needs to be isolated from the public with only occasional supervision and occasional interaction with coworkers, could perform Wyman's past relevant work.  The VE responded that such an individual could not perform Wyman's past relevant work because it would involve more

than occasional interaction with coworkers.  The ALJ then asked
the VE whether an individual with the same residual functional
capacity ("RFC"), age, education, and relevant work experience
as Wyman could perform any unskilled occupations.  The VE
testified that such a person could perform the jobs of kitchen
helper, cleaner, and marker.

The ALJ then asked the VE how many absences per month would
be tolerated by an employer, and the VE responded that fewer
than two absences per month would be tolerated by an employer,
and that two or more absences per month on a consistent basis
would generally not be tolerated by an employer.

C.   **The ALJ's Decision**

In his decision dated May 27, 2011, the ALJ followed the
five-step sequential evaluation process set forth in 20 C.F.R.
416.920(a) to determine whether an individual is disabled.  Tr.
16-24.  At the first step, the ALJ found that Wyman had not
engaged in any substantial gainful activity since December 16,
2009, the application date.  At step two, the ALJ found that
Wyman has the following severe impairments: alcohol abuse and
depression.  At step three, the ALJ found that Wyman's
impairments, including her substance abuse, meet sections 12.04
and 12.09 of 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ
further found that even if Wyman stopped her substance abuse,

8

her remaining limitations would cause more than a minimal impact
on her ability to perform basic work activities.  The ALJ found
that Wyman would still have a severe impairment or combination
of impairments even without her substance abuse, but that these
impairments would not meet or medically equal one of the listed
impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The
ALJ also concluded that if Wyman stopped her substance abuse,
she would have the RFC to perform a full range of work at all
exertional levels, except that: "she is limited to simple,
routine and repetitive tasks, performed in an environment
involving only simple work-related decisions and routine
workplace changes.  She would need to be isolated from the
public with only occasional supervision and occasional
interaction with co-workers."

        At step four, the ALJ concluded that Wyman would be unable
to perform any past relevant work even if she stopped her
substance abuse.  Finally, at step five, the ALJ noted that,
considering Wyman's age, education, work experience, and RFC,
there are jobs that exist in significant numbers in the national
economy that Wyman could perform if she stopped her substance
abuse.  Thus, the ALJ concluded that Wyman was not disabled
within the meaning of the Social Security Act at any time from
December 16, 2009, through May 27, 2011.

## II. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

The findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id. Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." Id. at 770.  Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence.  Id.

The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled.  20 C.F.R. § 416.920.  The applicant bears the burden through the first four steps of proving that her impairments preclude her from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner must present "evidence of specific jobs in the national economy that the applicant can still perform."  Id.; Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

### III.  ANALYSIS

If the ALJ finds a claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935.  The central issue in determining the materiality of drug addiction or alcoholism is whether the ALJ would find the claimant disabled even if he or she stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).  If the claimant's

11

drug addiction or alcoholism is a contributing factor material
to the determination of the claimant's disability, the claimant
is ineligible for SSI benefits.  Grogan v. Barnhart, 399 F.3d
1257, 1264 (10th Cir. 2005); Randall v. Astrue, 09-cv-11273-NG,
2011 WL 573603, at *1 (D. Mass. Feb. 15, 2011).

     In determining that a claimant's alcoholism or drug
addiction was a contributing factor material to the
determination of disability, the ALJ must identify some medical
evidence supporting the conclusion that a claimant no longer
would be disabled if he or she stopped drinking or taking drugs.
Sklenar v. Barnhart, 195 F. Supp. 2d 696, 700 (W.D.Pa. 2002).

     The only medical evidence that the ALJ cites to support his
conclusion that Wyman would not be disabled if she stopped
abusing alcohol is a statement made by Dr. Turnbull that
"Jennifer is unable to function in almost every area of her life
due to her drinking[.]  [S]he had worked in the past but seems
incapable at this time."  Tr. 339.  When this statement is read
in context, however, it is quite clear that Dr. Turnbill was
merely attempting to describe Wyman's residual functional
capacity during a period in which she was abusing alcohol.  He
was not expressing an opinion as to what her residual functional
capacity might be if she were able to successfully address her
alcoholism.  Because the ALJ acknowledged the fact that Wyman

                              12

suffers from serious psychological problems even when she is not drinking, he cannot rely on a physician's statement that she is unable to work when she is drinking for the very different proposition that she could work if she stopped abusing alcohol.

The ALJ's statement that Wyman's excessive drinking "occurs in conjunction with each instance of exacerbation of her mental health symptomatology" also fails to support his ultimate conclusion that her alcohol abuse is material to her inability to work.  A correlation between alcohol use and the exacerbation of an existing mental health problem can suggest either that consuming alcohol makes the problem worse or that a worsening psychological problem results in more alcohol consumption.  This evidence, therefore, does not lend much support to the ALJ's conclusion that Wyman would not be disabled if she stopped drinking alcohol.  In any event, the ALJ's conclusion must be discounted because there is no evidence in the record to support a finding that Wyman's condition improves substantially during periods of sobriety.  See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (finding alcohol to be a contributing factor material to disability where "[t]he evidence reflected that when Estes reduced her alcohol use she was able to conduct daily activities and perform certain jobs, confirming the conclusion that Estes's condition improved during periods of sobriety").

13

In summary, the evidence the ALJ cites does not amount to substantial evidence to support his conclusion that Wyman's alcoholism is a contributing factor material to her disability. See White v. Comm'r of Soc. Sec., 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (finding no medical evidence to support ALJ's conclusion regarding the effect of claimant's alcoholism on his mental impairments).[3]

## IV.   CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion to affirm (Doc. No. 16) and grant Wyman's motion to reverse or remand (Doc. No. 12).  Pursuant to 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this decision.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

February 7, 2012

---

[3]  The ALJ also failed to explain his decision to reject substantial medical evidence in the record suggesting that Wyman suffers from post-traumatic stress disorder and/or bipolar disorder in addition to depression.  On remand, the ALJ shall reassess the medical evidence with respect to this issue and make findings to support his conclusion.

```
cc:   Ralph A. Giangregorio, Esq.
      T. David Plourde, Esq.
```